# Case No. 16,547.

## UNITED STATES v. TURNER et al.

[2 Bond, 379.] [2]

Circuit Court, S. D. Ohio. Oct. Term, 1870.

INTERNAL REVENUE — TRANSPORTATION BONDS — EXECUTION BY CLERK OF PARTNERSHIP—RATIFICATION—LIABILITY OF SURETY.

1. A transportation bond, under the law in force at the date of its execution, signed by the obligors in blank, as to the quantity of spirits to be removed, and the amount in money which it was intended to secure, is not binding on the obligors, unless they adopted and ratified the bond,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

---

after the instrument was completed, by filling the blanks.

2. Such a bond, executed by a firm, in a partnership transaction, adopted and ratified by one member of the firm, becomes valid as to the firm.

3. The act of delivering the bond to the collector by one of the firm, after the blanks are filled, for the purpose of obtaining a permit for the removal of the spirits from the distiller's bonded warehouse, with the declaration that it was all right, is an adoption and ratification of the bond as completed, that makes it valid as to the parties so adopting and ratifying it.

4. Where such a bond is executed in the name of the firm by a clerk of the firm, who was in the habit of thus using the firm's name, without objection by the members, and who was the active manager of the business of the firm, it is not necessary for the United States to prove that the clerk was authorized thus to sign the bond by an instrument of writing under seal, or any written instrument.

5. If the jury find, from the evidence, that the firm did authorize the signing of their names by their clerk, either by parol or equivalent acts, it will be obligatory on the firm, especially if they used the bond for the purpose for which it was intended, and thus admitted the validity of its execution.

6. As to the surety in the bond, if there is no proof that he, either expressly or by implication, assented to and adopted it, after the additions to it, by filling the blanks, it is not obligatory on him.

At law.

Warner M. Bateman, U. S. Dist. Atty., and Henry Hooper, for the United States.

Burnett, Follet & Wright and Houk & McMahon, for defendants.

LEAVITT, District Judge (charging jury). This is an action brought by the United States against Joseph M. Turner and William Turner, as principals, and James McKhann, as surety, in a transportation bond, authorized by the revenue statute in force when the bond was executed. The defendants, Joseph and William Turner, were engaged in the business of distilling spirits, and the statute required every distiller to place the product of his distillery in a bonded warehouse, connected with the distillery, after which it was under the supervision of an officer of the government, and passed wholly from the control of the owner. If he desired to remove the spirits from the warehouse, for the purpose of sale, he could only do so by the payment of the tax due, or by obtaining a permit from the collector, and giving a bond to the government, with security, the condition of which was that the spirits should be delivered to some bonded warehouse of the class B, to which he desired it to be consigned, and which was specially designated in the bond. If the distiller failed to deliver the spirits according to the condition of the bond, the parties became liable for the sum named in it. This was called a transportation bond; and in this suit, the United States claim that there was a failure to deliver the spirits designated in the bond, whereby it became forfeited, and that the parties to it are liable for the sum

now claimed by the United States. The quantity of spirits to be removed was fifty barrels, and the government seeks to recover in this suit the amount of tax due on the spirits.

Joseph M. and William Turner were in partnership as distillers, under the name of Turner & Brother, and carried on an extensive business at Greenville, in Darke county. They undertook, by the bond in question, to deliver the spirits to the bonded warehouse of George W. Leech & Co., at Cincinnati. It is a fact not disputed in the case, and virtually admitted by the pleadings, that the fifty barrels were never delivered at this bonded warehouse, and that the tax has not been paid. How the spirits were disposed of does not appear from the evidence, nor is it a material inquiry in the case.

The result in this case obviously depends on the questions of law, involving the legal validity of the bond. To these questions I will direct the attention of the jury, and briefly state my conclusions. The counsel for the defendants in a very elaborate argument contend: First, That owing to certain additions inserted in the bond after it was executed, the bond sued on is not the bond they signed, and is legally null and void, and that there can be no liability under it. Secondly, That the bond was never executed by either of the members of the firm of Turner & Brother, or by any one duly authorized to sign for them, and therefore is of no obligation on them. These points, as the jury will perceive, are exceedingly technical in their character, and do not involve the real merits of this case.

As to the first point, I may remark, there is no dispute or controversy as to the facts. The bond, at the time the signatures of the parties were affixed, was a blank, printed form, furnished by the revenue department, in which, of course, the quantity of spirits to be removed, and the sum of money to be paid to the government in case of a breach of the condition of the bond, were not inserted. It is also an admitted fact that these blanks were subsequently filled by the insertion of the quantity of spirits, and the sum for which the parties were liable, without their presence, and without any express assent on their part. And the argument is, in support of the invalidity of the instrument, that as it now appears as the foundation of this action, it is not the same that the parties signed. In other words, and such is the plea of the defendants, they deny that the bond sued on is their bond. This point involves a purely legal question, and the weight of the authorities cited undoubtedly are that any addition to, or alteration of, an instrument of writing made after its execution, without the knowledge or consent of the parties, invalidates the instrument and relieves the parties from any liability under it. It may, however, be well doubted whether the law on this subject, as settled by the decisions of the courts, rests on the basis of sound rea-

son. It would seem more in accordance with reason and justice, that where a party gives his signature to an instrument of writing, knowing there are blanks to be filled, and it is afterward made complete and according to the object and intent of the parties, by filling the blanks in good faith, and in the absence of any fraudulent purpose, that parties should not be relieved from liability. Under the circumstances supposed, the intent of the parties is carried out by filling the blanks, and unless it appears they are injured by the completion of the instrument, or it has been done fraudulently, they ought not to be shielded from their liability. And, in relation to filling blanks in commercial instruments, such as promissory notes, bills of exchange, and so forth, their legal validity is not affected thereby. But, as before remarked, the law seems to have been otherwise settled in regard to bonds, and some other instruments. And I do not feel at liberty to decide adversely to the weight of legal authorities on this point. I am clear, however, there is good reason for legislative action to remedy what I must regard a defect in the law, as held by the courts.

But it is insisted by the counsel for the United States, that if the defendants can avail themselves of the law to shelter themselves from liability on the ground adverted to, the principals in this bond have recognized, ratified, and adopted the bond as their bond, after the blanks were filled, and the instrument made complete. And if this position is sustained by the evidence, there can be no question that the bond is operative and valid as against the parties who thus ratified and adopted it. There is testimony to the effect that William Turner did expressly assent to and adopt the bond, after all the blanks were filled; that he took the bond to the collector, after its completion, and delivered it to him, remarking that it was "all right." This was clearly an adoption of the bond by him. And on the faith that it was a legal and valid instrument, the collector issued a permit for the removal of the spirits, and it was accordingly delivered to the firm of Turner & Brother.

But it is claimed by the defendants' counsel, that as to the other partner, Joseph M. Turner, no act is proved showing his assent to the bond as completed, and therefore, as to him it is a nullity. But, as the spirits were the partnership property of the firm of Turner & Brother, and the transaction purely that of the firm, there can be no question that the act of one partner is binding on all the members of the firm. If, therefore, the jury believe that William Turner ratified and adopted the bond as claimed by the United States, it is the act of the firm, and is obligatory on the other member of the firm.

2. But, secondly, it is incumbent on the court to notice the other ground on which the principals in the bond seek to avoid their liability. Their plea is that they did not execute the

bond in its original form, and that it was not executed by any one having authority for that purpose. There is testimony that one John M. Turner, a son of one of the partners, and who largely conducted the business of the firm, affixed the name of the firm, William Turner & Brother, to the bond. There is no direct evidence that the clerk was specially authorized to use the name of the firm in the execution of this bond, and it appears that it was usual with him to sign similar bonds in the name of the firm, and that no objection had ever been made by the firm to such use of the name.

The argument of the counsel for Turner & Brother is, that this bond, which the statute requires to be under seal, could not be executed so as to give it legal validity, without proof of his agency for the purpose, by written instrument under seal. Before stating my conclusion on this legal point, it is proper to remark, if the bond was assented to, adopted, and ratified by the Turners after its execution, it would be equivalent to a waiver of all defects and irregularities in its execution. It would be an admission of the fact that John M. Turner, with the consent and approbation of the firm, placed the name of the firm to the bond, and they could not, in good faith, deny his authority. In this aspect, the question as to his want of authority is not a material one in this case. But I am not prepared to say that the law requires that it should appear that the clerk who signed the name of the firm to the bond had authority under seal, or, indeed, that any written authority was required for that purpose. And I feel justified in instructing the jury that if they find from the evidence, that in the course of the business of this firm the clerk was in the habit of signing the name of the firm to these constructive bonds, and that he did thus use their names without objection, and impliedly with their consent and approbation, and that in virtue of such bonds, they applied for and obtained permits from the collector, from time to time, for the removal of spirits from the distillery bonded warehouse, they may fairly infer, as a legal conclusion, that he had the requisite authority, and that the signing is obligatory on the individual members of the firm.

The court has not had the leisure or opportunity to refer specially to the numerous authorities cited by counsel, or to investigate the question as fully as under other circumstances might be desirable. But I may remark that, in my judgment, the time has come when courts should pause in adopting the ancient law in regard to the necessity and effect of seals in instruments of writing. In the present case I can not give my sanction to the doctrine insisted on, that because the bond was required by law to be under seal, therefore no authority could be given to another to execute it in the character of an agent, except by an instrument under seal. Doubtless there are an abundance of decided

cases sustaining this principle as settled law. But for years past there has been an evident tendency in the courts, as also in the legislative department, in this country, to modify and relax the common law dicta as to the effect and importance of seals. While in some matters it may not be expedient to abolish the use of seals, no reason is perceived why, in ordinary transactions of life, they should be required as necessary to the validity of instruments of writing. I submit it, then, as a question for the jury, whether the clerk who signed the name of the firm had authority from the firm thus to act, and that if they are satisfied there was such authority given, either express or implied, that the firm assented to and ratified the signing, the plea of the invalidity of the bond will not avail to acquit them of liability under it. It is proper to remark, that as to the defendant, James McKhann, the surety, there is no direct evidence that he gave any assent to, or recognized or adopted the bond, after it was completed, by filling up the blanks. And under the law, as I have endeavored to state it, on this point, the bond, by the additions and alterations made after the signing, was rendered invalid as to him. And unless the jury can find from the evidence that McKhann expressly, or by fair implication, gave his assent to the bond, after the additions and alterations were made, he can not be held liable in this action.

(The jury returned a verdict against Joseph M. and William Turner for the amount claimed by the United States, and found in favor of James McKhann, as surety.)